IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                             *

SENIOR DENTAL SERVICES, INC.      *       Case No: 15-15019-JS
                                                              (Chapter 11)
    Debtor                                      *

    *   *   *   *   *   *   *   *   *   *   *   *

MOTION TO APPROVE (I) SALE OF CERTAIN BUSINESS ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

Senior Dental Services, Inc., the debtor and debtor in possession herein (the "Debtor"), by counsel, files this Motion to Approve (I) Sale of Certain Business Assets Free and Clear of Liens, Claims, Encumbrances and Interests and (II) Assumption and Assignment of Certain Executory Contracts (the "Motion") pursuant to 11 U.S.C. §§ 363 and 365 (the "Bankruptcy Code"), and, in support of this Motion, the Debtor states:

Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are §§105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

Background

4. On April 8, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage its property and affairs as a debtor and debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. No committee of unsecured creditors or trustee has been appointed in this case.

6.	The Debtor is a Delaware corporation established in October 2010 with initial capitalization of approximately $160,000. The Debtor is owned by shareholders Bernt Killingstad, Thomas M. Lynch, Steve Harr, Desmond Elliot, Todd Britton-Harr, and Treasury (Patrick Britton-Harr Escrow).

7.	The Debtor began operations in January 2011 with headquarters in Annapolis Maryland under the direction of Patrick Britton-Harr as CEO, who had conceived the idea for the business while working at a similar company.

8.	The Debtor is the 100 percent owner of Senior Dental Services of Tennessee, LLC and 100 percent owner of Senior Dental Services of Virginia, LLC.

9.	The Debtor coordinates the provision of dental services to residents of long term care facilities. The Debtor coordinates these services through a Practice Management Agreement it has executed with a dental practice. Initially, the dental practice was Senior Dental Services Dentist, PLC, 100 percent owned by Dr. William Proffitt, which provided all dentistry for the Debtor's customers through January 15, 2015. Subsequent to January 15, 2015, these services have been provided by Virginia Elder Care Dentistry, PLLC.

10.	Initially, the Debtor commenced operations in the state of Tennessee. Within a few months, the Debtor ceased operations in that state to pursue business in Virginia because management determined that is was a more profitable market. Operations were moved to Virginia where the Debtor continues to operate.

11.	Subsequent to its initial capitalization, the Debtor has sustained continual financial losses and negative cash flow. The Debtor's losses have been covered primarily by principal shareholder and director Bernt Killingstad. To date, notes payable to Mr. Killingstad total $735,000, exclusive of interest and other fees. In addition, another shareholder, Thomas Lynch, has financed approximately $110,000, exclusive of interest and other fees.

12.	Due to Patrick Britton-Harr's mismanagement and unbeknownst to the directors of the Debtor, the company failed to pay on behalf of itself and Senior Dental Services Dentist PLC, substantial payroll withholdings and taxes to federal and state governments. The Debtor's current debt is approximately $900,000 plus accrued interest with outstanding amounts

to the IRS and state agencies of approximately $750,000. This does not include interest and penalties which are yet to be determined.

13. In mid-2012, after eighteen months of operations and accumulated losses, the board of directors directed Patrick Britton-Harr to hire Scale Finance, LLC ("Scale Finance") an outside consulting firm, to identify and correct the causes of the company's negative cash flow. It was determined that the cause of the cash flow issue was in receivables collections due to the complexity of billing Medicaid on a fee for service basis. During its consulting engagement, Scale Finance discovered, among other things, that the Debtor had not remitted withholding and payroll taxes to the appropriate governmental agencies. Scale Finance advised Patrick Britton-Harr that the Debtor needed to comply as soon as possible and prepared payroll tax returns for Patrick Britton-Harr to file and instructed him to begin remitting payments to the appropriate agencies.

14. In mid-2013, as a way of addressing Medicaid billing and receivables collection complexity, the Debtor entered into an agreement with Dominion Dental USA Inc. ("Dominion Dental") to provide insurance to cover the Debtor's services. After an initial false start in December 2013, the Debtor re-initiated its efforts to implement the insurance program in the second quarter of 2014 and received advanced payments from Dominion Dental for the program's enrollees. Unfortunately, many of the enrollees were not properly signed up and the Debtor's cash flow continued to deteriorate. During this time, the Debtor incurred payables to Dominion Dental of approximately $145,000.

15. In the second quarter of 2014, Patrick Britton-Harr opened an office in South Carolina and initiated operations in that state while Medicaid reimbursement and collection issues with Virginia remained substantially unsolved. By the end of September 2014, when the Annapolis lease expired, Patrick Britton-Harr did not renew the lease, moved its office employees to South Carolina and the Debtor's headquarters was constructively moved there. These changes were made by Patrick Britton-Harr without informing or requesting approval from the Debtor's board of directors.

16. The board of directors also discovered that Patrick Britton-Harr had covered the Debtor's cash shortfalls in a number of ways including, but not limited to, continued

non-payment of withholding and payroll taxes without informing the board of directors, paying personal expenses out of company bank accounts, and check kiting.  Patrick Britton-Harr had also procured "cash receipts" loans at usurious interest rates exceeding thirty percent annual percentage rate and solicited $100,000 of deposits from individuals for the right to do business with the Debtor.  The loans have been partially paid.  The deposits remain outstanding.

17. Upon discovering Patrick Britton-Harr's malfeasance in October 2014, the Debtor's board of directors took immediate action and removed Patrick Britton-Harr from his position as CEO.  Mr. Killingstad provided the Debtor with more capital intended to turn the company around.  The board of directors also appointed a new interim COO/CFO, and engaged counsel to provide guidance in becoming compliant with the payroll withholdings and tax obligations.  The replacement COO/CFO was supported by Steve Harr, Patrick Britton-Harr's father, a shareholder and former officer of the Debtor and other members of the management team, including Troy ("Mac") Britton-Harr, Sean Harr and Christian Ekberg.  Sean Harr and Troy Britton-Harr are siblings of Patrick Britton-Harr and Christian Ekberg was known to be a close friend of Patrick Britton-Harr.

18. Unfortunately, on January 15, 2015 when it appeared that the company was about to make headway, Steve Harr, Troy Britton-Harr, Sean Harr, Christian Ekberg and Dr. Proffitt implemented a plan they had developed to usurp the Debtor's business and compete with the Debtor in violation of their non-competition and confidentiality agreements.  This caused severe harm to the already struggling business and delayed prospects of turning it around.  The Debtor instituted litigation in the Circuit Court for Anne Arundel County, Maryland with respect to this matter, identified as *Senior Dental Services of Virginia, LLC, et al. vs. Servdental, Inc., et al.*, Case No. C-02-CV-15-000371.

19. Despite these events, Mr. Killingstad has funded the company's negative cash flow and the Debtor will need further investment if it has any hope of attaining positive cash flow.

Sale of the Business Assets

20. After a careful review of the Debtor's business and prospects as a going concern, the Debtor, in consultation with its legal and financial advisors, concluded that the

Debtor is not viable and its situation mandates the sale of certain assets of the Debtor and the assumption and assignment of certain executory contracts.

21. On or about February 28, 2015, SpaCreek Dental, Inc. ("SpaCreek" or "Purchaser") offered to purchase certain assets of the Debtor for the sum of $110,000.00 ("Purchase Price"). Attached as **Exhibit 1** is a form of Asset Purchase Agreement (the "Agreement") between the Debtor and SpaCreek that the parties anticipate executing upon approval of the sale by the Bankruptcy Court.

22. As part of the Agreement, SpaCreek will acquire (i) all tangible personal property, including all machinery, equipment, furniture, fixtures, office equipment, computer hardware, uniforms, supplies and other items of personal property owned or leased by the Debtor, and all warranties and licenses of the Debtor thereunder or related thereto; (ii) all deposits paid by the Debtor relating to or arising from the assets acquired; (iii) all advertising and promotional materials relating to the business and any rights thereto possessed, or entitled to be used, by the Debtor; (iv) all of the rights and benefits accruing from and after the closing under any of the contracts listed on Schedule A of the Agreement (as the same may be modified therein the "Acquired Contracts"); (v) all insurance benefits, rights and proceeds arising from or relating to any event or incident that affects, impacts or alters any asset being acquired during the pendency of the closing of the sale; (vi) all intellectual property, including but not limited to internet domain names, email addresses and social media pages; (vii) any causes of action in which the Debtor can assert rights as plaintiff, including but not limited to causes of action with respect to trust funds owed to the Internal Revenue Service; (viii) all of the Debtor's goodwill and other intangible assets, relating to, or in connection with, the business; and (ix) except as otherwise excluded under the Agreement, all other items of trade fixtures and personal property located at and/or used in connection with the ownership, use, occupancy or operation of the business, including signage, telephone numbers, facsimile numbers, customer listings and directories, promotional literature, all databases, and all customer data in whatever format, but in each case excluding employee records (collectively referred to herein as the "Business Assets").

23. Excluded from the purchase are (i) all of the Debtor's cash, checks, cash equivalents, and cash in transit, (ii) all accounts receivable of the Debtor in existence as of the

closing date, (iii) all equity ownership interests in the Debtor, (iv) except as otherwise acquired as set forth above, all insurance premiums, policies, contracts and coverage obtained by the Debtor and all rights to insurance proceeds or other contracts of insurance or indemnity (or similar agreement) recoveries; (v) all avoidance claims and causes of action arising under Chapter 5 of the Bankruptcy Code and any related claims and causes of action under applicable non-bankruptcy law arising out of the same set of facts, and the proceeds from any of the foregoing; (vi) all rights of and benefits to the Debtor under the Agreement or any other agreements or instruments otherwise delivered, executed or made in connection with the Agreement; (vii) all other contracts not expressly identified on Schedule A of the Agreement ("Excluded Contracts"); (vii) employee records and corporate seals, minute books, charter documents, stock transfer records, record books, tax returns and other financial records and such other files, books and records relating to any of the excluded assets or to the organization, existence or capitalization of the Debtor; (ix) all professional retainers paid by the Debtor to its advisors or representatives in connection with the this bankruptcy case and the transactions contemplated herein; and (x) any other assets of the Debtor not constituting acquired assets or that are not lawfully transferable.

24. The buyer identified in the Agreement is SpaCreek, which is owned by Bernt Killingstad and Thomas Lynch, the controlling shareholders of the Debtor. For the reasons discussed *infra*, SpaCreek is a good faith purchaser for the purposes of § 363(m) of the Bankruptcy Code.

25. The Debtor represents that the purchase price set forth in the Agreement is fair and reasonable, and the sale is in the best interests of the estate because the funds from the sale will be used to pay the Debtor's debt obligations in accordance with the Bankruptcy Code.

26. In contemplation of the sale, the Debtor sought independent review of the terms of the Agreement from Candlewood Partners ("Candlewood"), a third-party independent financial advisor and investment banker. Based upon Candlewood's analysis, it estimated the enterprise valuation of the Debtor at $103,140.00 and liquidation value at $67,327.00. Accordingly, the transaction contemplated herein is fair to the Debtor.

27. The Agreement is subject both to Court approval and to higher or otherwise better offers from other potential purchasers as further described herein.

28. The Debtor, after consultation with its advisors, believes that, as of the date of this filing, the Agreement executed with SpaCreek represents the highest and best offer received to date for the purchase of the Business Assets.

29. In addition, to facilitate and effect the sale, the Debtor seeks to assume and assign certain executory contracts to SpaCreek.

Relief Requested

30. By this Motion, the Debtor seeks entry of an Order under §§ 105 and 363 of the Bankruptcy Code and Rule 6004 authorizing the sale of the Business Assets. In conjunction with the sale, the Debtor seeks to assume and assign certain contracts pursuant to § 365 of the Bankruptcy Code.

31. Specifically, conditioned upon and simultaneous with the financial closing of the sale, the Debtor wishes to assume and assign the following contracts:

(a) The Employment Agreement, dated October 29, 2010, by and between the Debtor and Patrick T. Britton-Harr;

(b) The Employment Agreement, dated January 10, 2011, by and between the Debtor and Mac Britton-Harr;

(c) The Employment Agreement, dated March 26, 2013, by and between the Debtor and Sean Harr;

(d) Capitated In-Home Services Agreement, dated October 21, 2013, by and between the Debtor and Dominion Dental USA, Inc.;

(e) The Employment Agreement, dated December 4, 2013, by and between the Debtor and Christian Ekberg;

(f) The Employment Agreement, dated March 20, 2014, by and between the Debtor and Tracy Deckman;

(g) The Employment Agreement, dated May 21, 2014, by and between the Debtor and Shawna Miles;

(h) The Agreement, dated October 22, 2014, by and between the Debtor, Patrick Britton-Harr and Killingstad Investments LLC;

(i) The Severance Agreement, dated October 28, 2014, by and between the Debtor and Tracy Deckman;

  (j)  The Subscription and Services Agreement and Terms of Service, dated November 13, 2014, by and between the Debtor and Curve Dental, Inc.; and

  (k)  The Severance Agreement, dated April 24, 2015, by and between the Debtor and Darlene Gaffney.

Collectively, the executory contracts in (a) through (k) hereinabove, as amended, restated, or otherwise modified from time to time, together with any supplements thereto, referred to herein as the "Acquired Contracts".

Legal Basis for Relief Requested

**A.  The Debtor Has Articulated Sound Business Reasons in Support of the Sale**

  32.  Pursuant to § 363(b)(1) of the Bankruptcy Code, after notice and a hearing, a debtor in possession may use, sell or lease property of the estate other than in the ordinary course of business. This Court has held that transactions should be approved under § 363(b)(1) of the Bankruptcy Code when they are supported by a sound business reason. *In re Naron & Wagner, Chtd.*, 88 B.R. 85, 87 (Bankr. D. Md. 1988); *see also Rose v. Logan*, Case No. BR 12-25471-RAG, 2014 WL 1236008, at *7 (D. Md. Mar. 25, 2014)(citing *In re Siskind*, Case No. 02-65786-NVA, 2008 WL 2705528, at *6 (Bankr. D. Md. July 3, 2008) ("The factors the Court must find for approval of a sale are: (i) a sound business reason justifying the sale, (ii) adequate and reasonable notice of the sale to all parties, (iii) that the sale has been proposed in good faith and (iv) that the purchase price is fair and reasonable.").

  33.  The Debtor proposes to sell the Business Assets after thorough consideration of all viable alternatives. The Debtor has concluded that the existing company is not viable due to its many financial and management problems. The Debtor lacks sufficient funds to consummate the sale, including the funds to pay the costs of administering its Chapter 11 case and obligations required to be satisfied in connection with the sale. Therefore, on May 1, 2015, the Debtor filed a Motion for Order Authorizing and Approving Secured Debtor-in-Possession Financing ("Financing Motion") [Dkt. No. 20], pursuant to which Killingstad Investments LLC ("Killingstad Investments") has agreed to loan the Debtor up to $110,000.00 (the "Loan") to administer its bankruptcy case and consummate the sale, which transaction is the best and only means to maximize and preserve the value of the estate.

34.     Pursuant to the Candlewood opinion, the Purchase Price and terms of the Agreement are fair from a financial point of view of the Debtor and are in the best interests of the estate.

35.     Based on the Debtor's business judgment, and after thorough consideration of all viable alternatives, the Debtor asserts that the price set forth in the Agreement is the highest and best offer received to date and will bring the best return to the Debtor's estate. However, the Agreement is subject to higher or otherwise better offers from other potential purchasers.

**B.     Section 363 Permits the Court to Grant the Debtor Authority to Sell the Business Assets Free and Clear of Liens, Claims and Encumbrances and Interests**

36.     A debtor is permitted to sell property of the estate pursuant to § 363(f) of the Bankruptcy Code, which provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

37.     Because Bankruptcy Code § 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the sale free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343,345 (E.D. Pa. 1988). Furthermore, courts have recognized the trend in modern cases toward "a broader interpretation which includes other obligations that may flow from ownership of the property." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258 (3d Cir. 2000), *citing* 3 Collier on Bankruptcy 363.06[1].

38. The offer of $110,000 set forth in the Agreement is the highest and best offer received to date. The Debtor represents that the sale price set forth in the Agreement is fair and reasonable, and the sale, as subject to otherwise higher or better offers, is in the best interests of the estate.

39. To the extent the Court approves the Financing Motion, the only lien holder with an interest in the Business Assets is Killingstad Investments. Killingstad Investments consents to the sale. *See* Affidavit of Killingstad Investments LLC in Support of Motion to Approve (I) Sale of Certain Business Assets Free and Clear of Liens, Claims, Encumbrances and Interests and (II) Assumption and Assignment of Certain Executory Contracts ("Killingstad Affidavit"), attached as **Exhibit 2** and incorporated herein by reference. Pursuant to the sale, Killingstad Investments will be paid $110,000 toward the outstanding amount due under its financing arrangement and has consented to the sale.

40. The Debtor does not believe that there are any other liens on the Business Assets. To the extent that any person or entity asserts a lien against the Business Assets, they are being noticed as set forth herein. Any person or entity receiving this Motion that believes he/she/it has a lien on any of the Business Assets to be sold must notify the Court of the existence of such lien and/or file an objection within twenty-one days of service of this Motion. If any person or entity does not do so, they shall be deemed to have made an admission that they do not have a lien.

41. Should the Court determine that there are any liens on the Business Assets, then, absent any objections from the lienholder or any other interested party, to facilitate the sale, the Debtor proposes that all liens, if any, be transferred and attach to the sale proceeds received by the Debtor. Any liens on the assets will be satisfied or will attach to the proceeds of the sale of the Business Assets with the same force, effect and priority as such liens have on the Business Assets, subject to the rights and defenses, if any, of the Debtor and any party in interest with respect thereto. Accordingly, the Debtor submits that the statutory prerequisites of § 363(f) of the Bankruptcy Code for the Debtor to sell the Business Assets free and clear of liens are satisfied.

42. Pursuant to 11 U.S.C. § 363(f), the Business Assets may be sold free and clear of liens and encumbrances because all proceeds from the sale will be used to pay existing lienholders and other lienholders, to the extent any exist, could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

**C.   The Parties Have Demonstrated Good Faith under Bankruptcy Code § 363(m)**

43. Bankruptcy Code § 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

44. While the Bankruptcy Code does not define "good faith", the Fourth Circuit has stated that "[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Xact Telecommunications, Inc.*, Case No. DKC 2005-1230, 2006 WL 66665 (D. Md. Jan. 10, 2006) (citing *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

45. Although SpaCreek is owned by Mr. Killingstad and Mr. Lynch, two controlling shareholders of the Debtor, the sale is the result of arm's-length negotiations in which the buyer has acted in good faith. The purchase price is adequate and reasonable, and the terms of the sale are fully disclosed herein and in the attached Agreement. *See In re Abotts Dairies of Pa. Inc.,* 788 F.2d 143, 149-50 (3rd Cir. 1986) (parties acted in good faith if purchase price is adequate and reasonable and terms of sale are fully disclosed).

46. In *In re Xact Telecommunications*, the U.S. District Court for the District of Maryland held that it is not *per se* bad faith for the debtor to sell its assets to a buyer who is a fiduciary or insider of the debtor. Courts that have considered these sales typically consider various factors: (1) whether the sale involved full disclosure to the court and parties involved in the proceeding, (2) whether the debtor sought other buyers and whether the insider-buyer paid an

adequate price, and (3) the nature of the relationship between the debtor and the insider-buyer. *Id*. at *6-7. As set forth herein, the Debtor satisfies the factors set forth in *Xact Telecommunications*.

47. First, the Debtor has provided full disclosure of the relationship between the Debtor and SpaCreek to the Court and the parties involved.

48. Second, the Purchase Price set forth in the Agreement is a fair and adequate price. Further, pursuant to this Motion, the Agreement is subject to otherwise higher or better offers. In addition, notice of the terms of the sale are being provided (i) by mail to all of the Debtor's creditors and other parties in interest and (ii) listed with a business broker, Robert Croft (the "Broker") of Beltway Business Brokerage, Inc.

49. The Broker's services include, but are not limited to, marketing directly to strategic buyers and competitors of the business, presenting the listing to all private equity firms that operate similar businesses, creating an offering memorandum that will be sent to prospects, advertising the business on its website[1] as well as up to twenty-seven other websites, marketing to other business intermediaries and "cold calling" potential strategic buyers as well as financial buyers.

50. **To the extent that any party wishes to make a higher or otherwise better offer, the Debtor requests that such offer be submitted in writing to its counsel: James A. Vidmar, Yumkas, Vidmar & Sweeney, LLC, 10211 Wincopin Circle, Suite 500, Columbia, Maryland 21044 or at jvidmar@yvslaw.com by 5:00 pm on June 1, 2015. A hearing on this Motion is set for June 4, 2015 at 11:00 a.m. for the purpose of seeking Court approval of the highest or better offer received by the Debtor and to resolve any objections to the sale of the Business Assets.**

51. Third, the nature of the relationship between the Debtor and SpaCreek is not a disqualifying event. *See Xact Telecommunications, Inc.*, at *7.

52. In the present case, the Purchase Price set forth in the Agreement is at least equal to or greater than the appraised value of the assets.

---

[1] The website advertisement and listing of the Business Assets is located at http://beltwaybrokerage.com/listing.php.

53. Accordingly, the sale as detailed herein should be approved under § 363 of the Bankruptcy Code.

D. **Authorization of Assumption and Assignment of Contracts**

54. To facilitate and effect the sale, the Debtor seeks to assume and assign the Acquired Contracts identified in the Agreement to the purchaser SpaCreek.

55. A debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365 of the Bankruptcy Code does not specify a standard by which the court should approve or deny a debtor's decision to assume or reject executory contracts or unexpired leases. However, when reviewing the appropriate discretion of a debtor to assume or reject unexpired non-residential leases, most courts have applied a business judgment test. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 514 (1984) (discussing how "business judgment" standard applied to authorize rejection of an ordinary executory contract); *Grp. of Institutional Investors v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943) ("[T]he question whether a lease should be rejected, and if not, on what terms it should be assumed is one of business judgment."); *see also Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) *cert. den'd* 106 S.Ct. 1285 (1986).

56. Under the business judgment test, a court should approve a debtor's proposed assumption or rejection if it will benefit the estate. *In re United Press Int'l, Inc.*, 55 B.R. 63, 65 (Bankr. D.D.C. 1985) (determining that assumption of lease was in best interest of debtor, and that debtor satisfied "business judgment" test for determining whether debtor was entitled to assume lease). The business judgment test requires that the debtor demonstrate some advantage from its decision to assume or reject an unexpired lease. *See id.; see generally N.L.R.B.*, 104 S.Ct. 1188. A debtor's decision to assume or reject an executory contract or unexpired lease should be approved "except upon a finding of bad faith or gross abuse of the [debtor's] business discretion." *Lubrizol*, 756 F.2d at 1047; *see Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 20, 104 (D.D.C. 2011) *aff'd*, 758 F.3d 265 (D.C. Cir. 2014) (stating that under District of Columbia law, where business judgment rule applies, business judgment of

fiduciary will be respected by courts absent abuse of discretion). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control the case impartially." *Richmond Leasing v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

57. The assumption and assignment of the Acquired Contracts are an integral and indispensable part of the sale, thereby making the assumption and assignment necessary for the Debtor to consummate the sale and thereby maximize the value of its estates. Furthermore, the assumption and assignment makes business sense because any contract assumed and assigned reduces the estates' exposure to potential rejection damage claims.

58. Bankruptcy Code § 365(b)(1) provides that, as a condition to assumption of an executory contract or unexpired lease, the debtor must cure defaults under such executory contract or unexpired lease, subject to certain exceptions, and provide "adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b)(1). Bankruptcy Code § 365(f)(2) similarly provides that an executory contract or unexpired lease may not be assigned unless "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). Pursuant to the sale, SpaCreek will cure any existing default under the Acquired Contracts and provide the necessary information to holders of such Acquired Contracts to assure future performance.

59. The Debtor requests that the Order approving the sale waive the fourteen day stay under Bankruptcy Rule 6004(h) to permit immediate closing.

## Notice

60. Notice of this Motion has been given to the following parties or to their counsel, if known: (i) the Office of the United States Trustee; (ii) all of the Debtor's creditors; (iii) the appropriate party identified as the notice party in the Acquired Contracts; and (iv) all parties that have requested service of pleadings pursuant to Bankruptcy Rule 2002. The Debtor submits that the notices set forth in this paragraph be deemed adequate and complete under the

circumstances and that any further notice of the Motion or of the relief requested herein be dispensed with and waived.

Waiver of Memorandum

61. Pursuant to Local Rule 9013-2, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Debtor requests that the Court approve the Motion and enter an Order substantially in the form of the Order accompanying this Motion:

A. Authorizing the Debtor to sell the Business Assets, pursuant to the Asset Purchase Agreement, free and clear of liens, claims, encumbrances, and interests;

B. Authorizing the Debtor to assume and assign the Acquired Contracts pursuant to the Asset Purchase Agreement; and

C. Granting such other and further relief as is just and appropriate.

        /s/ James A. Vidmar
James A. Vidmar, 00271
Lisa Yonka Stevens, 27728
Yumkas, Vidmar & Sweeney LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(443) 569-5977
jvidmar@yvslaw.com

Counsel for Debtor

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of May 2015, notice of filing the Motion to Approve (I) Sale of Certain Business Assets Free and Clear of Liens, Claims, Encumbrances and Interests and (II) Assumption and Assignment of Certain Executory Contracts (the "Motion") was sent electronically to those parties listed on the docket as being entitled to such electronic notices, and a copy of the Motion was mailed first class, postage prepaid to the parties on the attached service list.

    /s/ James A. Vidmar
James A. Vidmar

AT&T
P. O. Box 105262
Atlanta, GA 30348-5262

Benco Dental Company
c/o Richard L. Greenberg, Esquire
Greenberg Law Firm
305 West Campbell Avenue
Roanoke, VA 24016

Bernt Killingstad
Killingstad Investments LLC
105 Scott Drive
Annapolis, MD 21401

Comcast Cable Communications, LLC
Attention: Law Department-Bankruptcy
One Comcast Center
Philadelphia, PA 19103-2838

Commonwealth of Virginia
Virginia Department of Taxation
P. O. Box 1777
Richmond, VA 23218

Deer Park Direct #215
6661 Dixie Highway, Suite 4
Louisville, KY 40258

Deer Park/Poland Spring
c/o Associated Credit Services, Inc.
115 Flanders Road, Suite 140
P. O. Box 5171
Westborough, MA 01581-5171

Desmond Elliot
2006 The Boulevarde, Royal Pines
Benowa 4218, Australia

Mike Davis, President and CEO
Dominion Dental Services, Inc.
115 South Union Street, Suite 300
Alexandria, VA 22314

Dr. Steven Brazel
101 Eleventh Avenue
Belmar, NJ 07719

Dr. William Proffitt
811 High Street
Maryville, TN 37804

EBF Partners, LLC
2001 NW 107th Avenue, 3rd Floor
Miami, FL 33176

Frost & Associates
1997 Annapolis Exchange Parkway,
Suite 300
Annapolis, MD 21401

Gallagher, Evelius & Jones LLP
218 North Charles Street, Suite 400
Baltimore, MD 21201

Henry Schein, Inc.
c/o Weinstock, Friedman & Friedman
4 Reservoir Circle
Baltimore, MD 21208-7301

Integrated Media Networks, Inc.
4823 Tilly Drive, Suite 150
Eldersburg, MD 21784

Internal Revenue Service
Centralized Insolvency Unit
P. O. Box 7346
Philadelphia, PA 19101-7346

Matt Lynch
252 Providence Road
Annapolis, MD 21409

McNamee, Hosea
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770

Melridge Partnership, LLP
700 Melvin Avenue, Suite 7
Annapolis, MD 21401

MSDS
1001 Land of Promise Road
Chesapeake, VA 23322

NetProffitt Enterprises
4835 Short Street
Suwanee, GA 30024

Patent GC LLC
P. O. Box 482
Sharon, MA 02067

Paul Murphy
Annapolis Senior Brokerage
3 Church Circle, Suite 161
Annapolis, MD 21403

Pitney Bowes
c/o Richmond North Associates, Inc.
P. O. Box 963
4232 Ridge Lea Road
Amherst, NY 14226-0963

Pitney Bowes Purchase Power
P. O. Box 856042
Louisville, KY 40285-6042

Sage Capital Recovery
1040 Kings Highway North
Cherry Hill, NJ 08034

Scale Finance LLC
P. O. Box 110404
Durham, NC 27709-5404

Smart Practice
P. O. Box 29222
Phoenix, AZ 85038-9222

State Compliance Center of Tennessee
312 Rosa L. Parks Avenue
Snodgrass Tower, 6th Floor
Nashville, TN 37243

| | | |
|---|---|---|
| State of Maryland<br>Comptroller of the Treasury<br>110 Carroll Street<br>Annapolis, MD 21411 | Suzie Schwartz<br>257 Malibu Court<br>Severna Park, MD 21146 | The Supply Room Companies<br>P. O. Box 1810<br>Ashland, VA 23005 |
| Thomas M. Lynch<br>700 Melvin Avenue, Suite 1<br>Annapolis, MD 21401 | Todd Britton-Harr<br>(Register Number: 82203-279)<br>c/o FCI Fort Dix<br>5756 Hartford Street<br>Fort Dix, NJ 08640 | U.S. Postal Service<br>CMRS-TMS<br>P. O. Box 7247-0217<br>Philadelphia, PA 19170-0217 |
| Verizon<br>P. O. Box 660720<br>Dallas, TX 75266-0720 | Verizon<br>P. O. Box 920041<br>Dallas, TX 75392-0041 | Comptroller of the Treasury<br>Compliance Division, Room 409<br>301 West Preston Street<br>Baltimore, Maryland  21201-2305 |
| Secretary of the Treasury<br>15th & Pennsylvania Avenue<br>Washington, D.C.  20220-0001 | State of Maryland DLLR<br>Division of Unemployment Insurance<br>1100 North Eutaw Street, Room 401<br>Baltimore, Maryland  21201-2225 | U.S. Attorney, District of Maryland<br>36 South Charles Street, 4th Floor<br>Baltimore, Maryland  21201-3119 |
| US Securities & Exchange Commission<br>Atlanta Reg. Office and Reorg.<br>950 E Paces Ferry Road, NE, Suite 900<br>Atlanta, Georgia  30326-1382 | Steve Harr<br>2800 Maize Court<br>Chester, Maryland  21619 | Patrick Britton-Harr<br>39 Mary Street<br>Charlestown, South Carolina  29401 |
| Mac Britton-Harr<br>2449 Fulford Court<br>Mount Pleasant, South Carolina  29466 | Sean Harr<br>2800 Maize Court<br>Chester, Maryland  21619 | Christian Ekberg<br>330 Concord Street, #2G<br>Charleston, South Carolina  29401 |
| Tracy Deckman<br>39 Mary Street, Apartment 1<br>Charleston, South Carolina  29403 | Shawna Miles<br>907 Selby Boulevard<br>Edgewater, Maryland  21037 | Curve Dental, Inc.<br>424 West 800 North, Suite 202<br>Orem, Utah  84057 |
| Darlene Gaffney<br>1003 Timber Creek Drive<br>Annapolis, Maryland  21403 | | |

The following parties received electronic notice of the filing:

| | | |
|---|---|---|
| Maria Ellena Chavez-Ruark, Esquire<br>Counsel for Dominion Dental<br>Saul Ewing LLP<br>500 East Pratt Street, 9th Floor<br>Baltimore, Maryland  21202 | Edmund A. Goldberg, Esquire<br>Office of the U.S. Trustee<br>101 West Lombard Street, Suite 2625<br>Baltimore, Maryland  21201 | James A. Vidmar, Esquire<br>Counsel for Debtor<br>Yumkas, Vidmar & Sweeney LLC<br>10211 Wincopin Circle, Suite 500<br>Columbia, Maryland  21044 |